UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

T.N. METRO HOLDINGS, I, LLC, et al.,

                     Plaintiffs,

    -v-

COMMONWEALTH INSURANCE COMPANY,

                 Defendant.

11-CV-6063 (KMK)

OPINION & ORDER

Appearances:

David Carlebach, Esq.
The Law Offices of David Carlebach, Esq.
New York, NY
*Counsel for Plaintiffs*

Andrew S. Jacobson, Esq.
Dawn M. Brehony, Esq.
Clausen Miller P.C.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Plaintiffs TN Metro Holdings I, LLC; TN Metro Holdings III, LLC; TN Metro Holdings IV, LLC; TN Metro Holdings V, LLC; TN Metro Holdings VI, LLC; TN Metro Holdings VII, LLC; TN Metro Holdings VIII, LLC; TN Metro Holdings IX, LLC; and TN Metro Holdings X, LLC, (collectively "Plaintiffs" or "TN Metro") filed this Action against Commonwealth Insurance Company ("Defendant" or "Commonwealth") alleging breach of contract and unjust enrichment.  (*See* Compl. (Dkt. No. 1).)  Specifically, Plaintiffs allege that as a result of Defendant's breach of contract, Plaintiffs incurred damages including Defendant's failure to pay for damage and repair to property, loss of income and profits, loss of property due to foreclosure,

and loss of future unrealized profits.  (*Id.* ¶ 36.)  Plaintiffs also allege that Defendant was

unjustly enriched at Plaintiffs' expense due to Defendant's withholding of insurance proceeds

owed to Plaintiffs.  (*Id.* ¶¶ 39–40.)  Before the Court is Defendant's Motion For Summary

Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56.  (*See* Notice of Mot. For

Summ. J. (Dkt. No. 80).)  For the reasons given herein, Defendant's Motion is granted.

## I.  Background

### A.  Factual Background

Defendant Commonwealth issued insurance policy US6703 (the "Policy") to Green

Realty Development Company ("Green Realty"), insuring six properties located in Clarksville,

Tennessee.  (Def.'s Statement of Undisputed Material Facts ("Def.'s 56.1") ¶ 1 (Dkt. No. 79).)[1]

The properties were deleted from coverage effective April 25, 2007, pursuant to an endorsement

to the Policy.  (*Id.* ¶ 2.)

On April 24, 2007, a severe hailstorm occurred, which Plaintiffs allege caused damage to

the properties.  (*Id.* ¶ 4; Pls.' Statement of Undisputed Material Facts ("Pls.' 56.1") ¶ 7 (Dkt. No

95).)[2]  On the same day, Plaintiffs and Green Realty signed an Interest and Sales Agreement

---

[1] In their statement of undisputed facts pursuant to Local Civil Rule 56.1 (Rule 56.1 statement), Plaintiffs fail to answer Defendant's Rule 56.1 statement and fail to provide any support in the record to substantiate the majority of their own statements, as required by Rule 56.1(d).  *See* S.D.N.Y. Civ. R. 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, *must be followed by citation to evidence which would be admissible*, set forth as required by Fed. R. Civ. P. 56(c)." (emphasis added)).  Accordingly, where Defendant's Rule 56.1 statement is unanswered, those facts are conceded.  Also, the Court declines to consider Plaintiffs' unsubstantiated allegations as undisputed for the purpose of deciding the instant Motion.

[2] In its Rule 56.1 statement, Defendant notes that Plaintiffs made certain allegations in their Complaint.  (*See, e.g.*, Def.'s 56.1 ¶¶ 4, 5, 6, 26, 28.)  As Plaintiffs failed to provide support for these allegations in their Rule 56.1 statement, they are not considered here.

dated January 24, 2007 (the "Sales Agreement").  (Def.'s 56.1 ¶ 5.)[3]  On November 15, 2007,

Plaintiffs submitted their first claim to Defendant, regarding one particular property covered by

the Policy.  (*See id.* ¶ 9; Pls.' 56.1 ¶ 13.)

On December 4, 2007, a representative of Vericlaim, Defendant's agent, issued a letter to

Green Realty.  (Def.'s 56.1 ¶ 10.)  The letter alerted Green Realty that Commonwealth had

received notice of an occurrence and a request of coverage, but that that there was a question

whether coverage under the Policy applied to the occurrence.  (*Id.*)  The letter also stated that

Commonwealth reserved its rights to deny coverage under the Policy.  (*Id.*)

On March 26, 2008, Defendant received claims as to seven additional locations.  (*Id.*

¶ 11.)  On April 30, 2008, Vericlaim issued a letter to Green Realty and Pagani & Kearns,

Plaintiffs' counsel at the time, stating that Commonwealth was investigating whether some or all

---

[3] Plaintiffs allege that pursuant to this Sales Agreement, Plaintiffs purchased all of the properties at issue, (Def.'s 56.1 ¶ 5; Pls.' 56.1 ¶ 6), and became assignees and beneficiaries of Green Realty's insurance claims under the Policy, (Def.'s 56.1 ¶ 6; Pls.' 56.1 ¶¶ 13, 16, 17). According to Plaintiffs, this purchase occurred on April 24, 2007, but the transaction took "took two days to close and continued from April 24, 2007 to April 25, 2007."  (Pls.' 56.1 ¶ 6.) Plaintiffs assert that on May 9, 2007, Steve Green, the principal of Green Realty, "was hit by a car and incapacitated in a comatose state for several months."  (*Id.* ¶ 12.)  As a result of this accident, "Plaintiffs were unable to obtain the necessary assignment, power of attorney, or authority to submit claims to the insurance carriers" for several months.  (*Id.* ¶ 13.)  Plaintiffs provide no support for these statements.
        In its September 30, 2014 Order, the Court found that "while the provision of the Sales Agreement upon which Plaintiffs rely requires the seller *shall assign* to [TN Metro] the right to make a claim under the casualty insurance policies, the agreement itself does not demonstrate that any such assignment actually occurred."  (*See* Order (Sept. 30, 2014) 12 (Dkt. No. 49) (internal quotation marks and citations omitted).)  Plaintiffs have failed to produce any evidence indicating otherwise.  However, for purposes of the instant Motion, the question of the validity of the assignment of the properties is irrelevant.

of the claimed damage to the properties occurred after expiration of the Policy.  (*Id.* ¶ 12.)  The letter again contained a reservation of rights.  (*Id.*)

On May 5, 2008, Pagani & Kearns responded to Vericlaim's April 30, 2008 letter, stating that "[they] underst[ood] the questioning on the timing of the claims[,] [b]ut . . . believe[d] [they] answered those questions."  (*Id.* ¶ 13.)  In June 2008, Vericlaim issued a letter to Green Realty, again informing Green Realty that Commonwealth was continuing to investigate the claims and that it "expressly reserve[d] all of its rights and defenses under the Policy."  (*Id.* ¶ 14.) Defendant did not receive a response to this letter.  (*Id.* ¶ 15.)

In March 2009, Defendant issued a letter to Green Realty and Plaintiff TN Metro Holdings I, LLC, stating that despite its nearly year-long request for proof of assignment of the Policy, Defendant had not received any evidence of the alleged assignment.  (*Id.* ¶ 16.)  The letter further stated that Defendant would close the file within 30 days if it did not receive written documentation of the assignment.  (*Id.* ¶ 17.)  Defendant again reserved its rights and defenses under the Policy.  (*Id.*)  Defendant did not receive a response to this letter.  (*Id.* ¶ 18.)

In August 2009, Defendant sent a follow-up letter to Green Realty and Plaintiff TN Metro Holdings I, LLC, attaching the March 2009 letter, reiterating its contents, and notifying the recipients that unless Commonwealth received written evidence of an assignment of the Policy, it would retire the file.  (*Id.* ¶ 19.)  Defendant did not receive a response and accordingly, closed its file.  (*Id.* ¶¶ 20, 21.)[4]

---

[4] Plaintiffs allege that after submitting their claims to Defendant, Defendant's "representatives repeatedly advised Plaintiffs that the compensation checks were being processed."  (Pls.' 56.1 ¶ 24.)  Indeed, according to Plaintiffs, Green Realty gave approval to Defendant to send payments to Pagani & Kearns, Plaintiffs' counsel at the time.  (*Id.*)  Plaintiffs aver that follow-up telephone inquiries to Defendant produced no checks, (*id.*), and that instead,

B.  Procedural History

On August 30, 2011, Plaintiffs filed this Action, alleging both a breach-of-contract claim and an unjust enrichment claim.  (Compl.)  On April 30, 2012, Defendant filed a Motion To Dismiss, (Dkt. No. 17), which the Court denied on February 25, 2013, ordering Defendant to "submit a motion for summary judgment" within fourteen days, (Order (Feb. 25, 2013) 2 (Dkt. No. 23)).[5]  Pursuant to the Court's February 25, 2013 Order, in their briefing on the motion for summary judgment, the Parties were instructed to address the relevance of *Fabozzi v. Lexington Insurance Co.*, 601 F.3d 88 (2d Cir. 2010).  (Order (Feb. 25, 2013) 2.)  Plaintiffs requested

---

Defendant questioned the condition of the properties at the time of sale, (*id.* ¶ 25), and suggested that the damage might have been caused by additional storms between the sale and the filing of the insurance claims, (*id.* ¶ 27).  According to Plaintiffs, the delays in compensation were problematic because Plaintiffs could not repair the damage to the properties and therefore, could not rent out the units.  (*Id.* ¶ 26.)  This, in turn, prevented Plaintiffs from making their debt payments.  (*Id.*)

Plaintiffs assert that on or about June 4, 2008, "approximately a year and a half after the submission of the claims," Vericlaim sent Green Realty a letter informing Green Realty that "Defendant may not approve the claim as it is still under investigation," and making clear that "only damages incurred to the [p]roperties prior to April 25, 2007 could potentially be covered" under the Policy.  (*Id.* ¶ 29.)

Plaintiffs allege that on or about July 14, 2009—more than two years after the hailstorm—an outfit called Granite State Insurance Company ("Granite State"), allegedly acting as an agent of Defendant, sent two checks to Plaintiff TN Metro Holdings I, LLC for one of the properties.  (Def.'s 56.1 ¶ 28; Pls. Opp'n 7 n.1.)  Plaintiff has not cited to any evidence to substantiate these allegations, and so the Court does not take them to be undisputed facts.

[5] Federal Rule of Civil Procedure 12(d) provides in relevant part:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  Accordingly, the Court gave notice to the Parties in its February 25, 2013 Order and allowed the Parties "a reasonable opportunity to present material pertinent to a summary judgment motion."  *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (internal quotation marks omitted).

discovery, to which Defendant objected in a letter to the Court.  (Dkt. No. 24.)  The Court held a conference to discuss the need for discovery and, pursuant to the Court's April 22, 2013 Order, the Parties engaged in discovery limited to the issue of this suit's timeliness.  (Order (Apr. 22, 2013) (Dkt. No. 26).)

On November 18, 2013, Plaintiffs filed a Motion To Amend their Complaint to allege a claim of fraud, based on documents produced as part of the aforementioned discovery.  (Dkt. Nos. 41, 42.)  Defendant filed its memorandum of law in opposition on December 6, 2013, (Dkt. No. 44), and on December 18, 2013, Plaintiffs filed their reply, (Dkt. No. 48).  On September 30, 2014, the Court denied Plaintiffs' Motion To Amend.  (Order (Sept. 30, 2014) (Dkt. No. 49).)

On February 2, 2016, the Court held a Conference and adopted a scheduling order permitting Plaintiffs to take two requested depositions by March 2, 2016.  (Dkt. No. 75.)  On March 3, 2016, Plaintiffs requested an extension of time to complete the depositions, (Dkt. No. 84), and Defendant submitted an opposition to the request, (Dkt. No. 85).  The Court instructed Plaintiffs to respond to Defendant's opposition by March 8, 2016, (Dkt. No. 86), but Plaintiffs failed to do so.  The Court denied Plaintiffs' request to extend the deposition deadline, (Dkt. No. 87), and Plaintiffs did not take any depositions in the instant Action.

On March 3, 2016, Defendant filed the instant Motion along with a supporting memorandum of law.  (Def.'s Mem. of Law in Supp. of Mot. For Summ. J. ("Def.'s Mem.") (Dkt. No. 82).)  Plaintiffs filed their response on April 8, 2016, (Pls.' Mem. of Law in Opp'n to Def.'s Mot. For Summ. J. ("Pls.' Opp'n") (Dkt. No. 93)), and Defendant filed its reply on May 2,

2016, (Def.'s Mem. of Law in Reply to Pls.' Opp'n to Mot. For Summ. J. ("Def.'s Reply") (Dkt. No. 101)).[6]

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at *2 (S.D.N.Y. Apr. 9, 2014) (same).  "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the

---

[6] Also pending before the Court is Defendant's Motion To Strike certain portions of Plaintiffs' Opposition to Defendant's Motion For Summary Judgment and Plaintiffs' statement pursuant to Local Rule 56.1, filed May 16, 2016.  (Dkt. No. 104.)  Plaintiffs filed a response to Defendant's Motion To Strike on May 31, 2016.  (Dkt. No. 105.)  The Court has reviewed these submissions and grants Defendant's Motion To Strike in its entirety for reasons described above in footnotes 1 and 2.

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alterations and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere allegations or denials contained in the pleadings," *Walker v. City of New York*, No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, MDL No. 1358, No. M21–88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

B.  Analysis

1.  Statute of Limitations

Under New York law, parties to a contract may designate a statute of limitations within which a claim arising out of the contract is to be brought, even if that period is shorter than that designated by statute.  *See Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) ("New York permits contracting parties to shorten a limitations period . . . if the agreement is memorialized in writing."); *see also Epstein v. Hartford Life & Accident Ins. Co.*, 449 F. App'x 46, 47 (2d Cir. 2011) ("The applicable limitations period is that specified in the most nearly analogous state limitations statute, which in this case is New York's six-year limitations period for contract actions.  However, New York permits contracting parties to shorten a limitations period if, as here, the agreement is memorialized in writing." (internal quotation marks, citations, and alteration omitted)).

The insurance policy issued by Defendant, Policy US6703, contains a limitations period for filing actions.  Titled "Suit," the relevant paragraph states:

> No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the same be *commenced within Twelve (12) months next after the Occurrence which gives rise to the claim.*

(Def.'s 56.1 ¶ 26; Aff. of Katherine Lee ("Lee Aff.") (Feb. 1, 2012) Ex. 1, at 43, ¶ 26 (Dkt. No. 19-5) (emphasis added).)

Along with this provision, Policy US6703 contains three additional provisions relevant to the timeliness of Plaintiffs' Action.  The first such provision provides a definition for "Occurrence."  Under the Policy, Occurrence is defined as:  "any one loss, disaster or casualty or series of losses, disasters or casualties arising out of one event."  (Lee Aff. 8, ¶ 8(g).)

The second additional provision describes what property losses are covered under the Policy issued by Defendant.  Under the heading "Insured Perils," the Policy states that it "insures against All Risks of direct physical loss of or damage to the Insured Property, commencing during the Policy period, except as excluded herein."  (*Id.* at 10, ¶ 3.)  Excluded from coverage is "loss, destruction, or damage" caused by "delay, loss of market, loss of use and occupancy, or consequential loss."  (*Id.* at 10, ¶¶ 4, 4(l).)

The third additional provision relates to recovery for lost "rent and rental value."  (*Id.* at 26, ¶ 2 (internal quotation marks omitted).)  The Policy limits recovery to losses "commencing with the date of such destruction or damage and limited to a period of twelve (12) consecutive months from the date of such destruction or damage."  (*Id.*)

Plaintiffs contend that the Occurrence that triggers the limitations provision is "the 'series of losses' resulting from the hailstorm, which would start the clock running on the 12 month time limit."  (Pls.' Opp'n 2.)  Plaintiffs assert that such "series of losses" "continue to this day" and that due to this continuing loss resulting from uncompensated damage and inability to service the debt on the properties, the time for Plaintiffs to commence this Action "has never expired."  (*Id.* at 2, 12.)  Defendant counters that under the Policy, Plaintiffs were permitted to file suit against Commonwealth until 12 months after the Occurrence—the April 24, 2007 hailstorm.  (*See* Def.'s Mem. 7.)

Substituting the Policy's definition of Occurrence into the suit limitation provision, the provision states that Plaintiffs are required to bring suit within 12 months "after [any one loss, disaster or casualty or series of losses, disasters or casualties arising out of one event] which give[] rise to the claim."  (Lee Aff. Ex. 1 at 43, ¶ 26; 8, ¶ 8(g).)  Taken together with the second and third provisions detailed above, the Court reads the Policy to limit the time to sue at either 12

months from the date of the disaster or casualty, i.e. the April 24, 2007 hailstorm, or at the outer

limit, 12 months from the final date when Plaintiffs could be compensated for covered losses, in

this case, the lost rental income on the properties.  Under the first of the two circumstances,

Plaintiffs would have had to file their Action by April 24, 2008, 12 months after the hailstorm.

Under the latter interpretation, Plaintiffs would have had to bring suit by April 24, 2009, one

year after "a period of twelve (12) consecutive months from the date of such destruction or

damage" to recover for lost rent or rental value.  (*Id.* at 26, ¶ 2.)

In the past, New York courts held that the particular language in a policy's statute of

limitations provision dictates whether the period begins running at the date of the disaster the

policy insures against or the date at which the claim accrues.  In *Proc v. Home Insurance Co.*, the

New York Court of Appeals held that a fire policy provision limiting suit unless commenced

within 12 months "after inception of loss," ran from the date of the fire, even though the causes

of action against the insurers had not yet accrued.  270 N.Y.S.2d 412, 415 (N.Y. 1966).  In

subsequent years, New York intermediate appellate courts expanded the holding in *Proc*, finding

that the phrase "date of loss" is equivalent to the phrase "after inception of loss."  *See Klawiter v.

CGU/OneBeacon Ins. Grp.*, 810 N.Y.S.2d 756, 757 (App. Div. 2006) (finding the "date of loss"

under the policy was "the date of the catastrophe insured against"); *Roberts v. N.Y. Prop. Ins.

Underwriting Ass'n*, 677 N.Y.S.2d 621, 622 (App. Div. 1998) ("The phrase ['date of loss'] has

been held to refer to the date of the catastrophe insured against, and not the date of the

completion of the process to determine the loss."); *Costello v. Allstate Ins. Co*, 646 N.Y.S.2d

695, 696 (App. Div. 1996); ("There is no merit to the plaintiffs' contention that the words 'date

of loss' appearing in their policy are ambiguous, or mean anything different than the words 'after

inception of the loss' appearing in [state insurance law].  Both phrases have consistently been

held to refer to the date of the catastrophe insured against, and not to the accrual date of the

plaintiffs' claim against [defendant] for failure to pay.").

  However, in *Fabozzi v. Lexington Insurance Co.*, 601 F.3d 88 (2d Cir. 2010), the Second

Circuit rejected New York state intermediate appellate authority as inconsistent with the

Circuit's view of what the New York Court of Appeals had previously held in *Proc* and other

cases.[7]  Rather, in *Fabozzi*, the court emphasized that "only by exceptionally clear language

could an insurer insist" that a limitations period "should be looked to as the event, from the

happening of which the limitation should run." *Id.* at 91 (internal quotation marks omitted).  The

Second Circuit held that the magic phrase "'after the inception of the loss' is regarded . . . as a

term of art which fixes the limitations period to the date of the accident." *Id.*  Importantly,

"[o]ther generic language . . . does not carry this same meaning; instead, it ties the limitations

period to the moment when a claim accrues." *Id.*  Finally, the *Fabozzi* court held that a contract

that said "the limitations period would expire 'two years after the date of loss'" was too generic

to start the clock at the date of the accident, and so the Second Circuit started the clock in that

case at the time the claim accrued. *Id.* at 93.

  Here, the language in the suit limitation provision does not use the magic phrase

"inception of the loss," or the phrase "the date on which the direct physical loss or damage

occurred," which one court has held to be its equivalent.  *See Pfeffer v. Harleysville Grp., Inc.*,

No. 10-CV-1619, 2011 WL 6132693, at *7 (E.D.N.Y. Sept. 30, 2011) (emphasis omitted), *aff'd*

502 F. App'x 28 (2d Cir. 2012).  Rather, the language in the provision in Defendant's Policy—

---

[7] Despite the Court's February 25, 2013 Order instructing the Parties to address *Fabozzi v. Lexington Insurance Co.* in their briefing on the Motion For Summary Judgment, (*see* Order (Feb. 25, 2013) 2), Plaintiffs failed to do so in their Opposition to Defendant's Motion, (*see* Pls.' Opp'n).

which refers to "loss" or a "series of losses"—is that considered generic in *Fabozzi*, or at the

very least, ambiguous.  Because "any ambiguity in an insurance policy should be resolved in

favor of the insured," *McCostis v. Home Ins. Co.*, 31 F.3d 110, 113 (2d Cir. 1994), under

*Fabozzi*, the Policy's suit limitation provision here is not triggered until the time Plaintiffs' claim

accrues, *Fabozzi*, 601 F.3d at 92.  However, as noted, even if the claim did not accrue until the

covered loss was incurred, Plaintiffs had until April 24, 2009 to initiate this Action, thus making

this case untimely.

   In addition to averring that their losses "continue to this day," (*see* Pls.' Opp'n 2, 8, 12,

13, 15), Plaintiffs argue that their causes of action for breach of contract and unjust enrichment

are not barred because the "loss" only accrues once Defendant disclaims coverage under the

Policy, (*see id.* at 3.)  Thus, under an alternative theory, Defendant's disclaimer of coverage,

rather than the hailstorm, triggers the 12-month statute of limitations.  Indeed, according to

Plaintiffs, the clock has yet to start running because Defendant has never disclaimed coverage.

(*See id*. at 3, 9).[8]  In response to this allegation, Defendant submitted the two letters sent to

Plaintiffs in March and August of 2009 disclaiming coverage due to a lack of a valid assignment

of the Policy from Green Realty to Plaintiffs.  The first letter from Defendant to Green Realty

and TN Metro Holdings I, LLC, sent in March 2009, states:

> For nearly a year, Commonwealth has been requesting proof of the
> assignment of liquidated claim from Green Realty to TN Metro
> Holdings for the Riverside Apartment complex as well as the seven
> additional apartment complexes.  Despite our repeated requests, we

---

[8] Plaintiffs do not explicitly raise this point in the argument section of their Opposition.
Rather, in the preliminary statement section of the brief, Plaintiffs state that "the suit limitations
provision fails as a matter of law" because "Defendant never disclaimed coverage in breach of
the insurance agreement," and therefore, "causes of action for breach of contract and unjust
enrichment [are] barred prior to their accrual."  (Pls.' Opp'n 3.)

> have not been provided with any document, evidencing an
> assignment of the liquidated claim under the Policy. . . .  Unless
> you can provide us with written documentation establishing an
> assignment of Green Realty's claim under the Policy to TN Metro
> Holdings within the next thirty (30) days, we will close our file on
> this matter.  Commonwealth must advise you that neither by this
> letter nor by any other conduct does Commonwealth waive any of
> its rights and defenses under the Policy, including the right to rely
> upon late notice and a breach of the contractual suit limitation.

(Def.'s 56.1 ¶¶ 16, 17.)  As noted, Defendant did not receive a response to this letter.  (*Id.* ¶ 18.)

On August 21, 2009, Defendant sent a second letter to the same entities, enclosing a copy

of the March 2009 letter, and stating:

> [U]nless you provide us with written documentation establishing
> an assignment of Green Realty Development Company claim
> under Policy No. US6703 (the "Policy") within the next 30 days,
> we will retire our file.  Commonwealth Insurance Company
> ("Commonwealth") must again advise you that neither by this
> letter nor by any other conduct does Commonwealth waive any of
> its rights and defenses under the Policy, including the right to rely
> upon late notice and a breach of the contractual suit limitation.

(*Id.* ¶ 19.)  Again, Defendant did not receive a response to the August 2009 letter, (*id.* ¶ 20), and

accordingly, closed its file, (*id.* ¶ 21).

Assuming that the language of the suit limitation provision is ambiguous and that

Plaintiffs are correct that disclaimer of coverage triggers the statute of limitations, the Court

finds that Defendant has offered sufficient evidence that it disclaimed coverage through its 2009

correspondence.  As a result, the 12-month period to file suit would begin 30 days from the date

of Defendant's final letter, allegedly sent August 21, 2009.  Plaintiffs would have had until

September 20, 2010 to bring this Action against Defendant.  Thus, Plaintiffs' suit, filed on

August 30, 2011, is barred as untimely.  *See Nikchemny v. Allstate Ins. Co.*, No. 16-CV-407,

2016 WL 6082034, at *3–4 (E.D.N.Y. Oct. 17, 2016) (granting the defendant's motion to

dismiss because the statute of limitations had run on the plaintiff's breach of insurance contract

14

claim); *Urraca v. Citibank, N.A.*, No. 14-CV-2381, 2014 WL 5062039, at *2 (S.D.N.Y. Oct. 6, 2014) (finding the applicable statute of limitations barred the plaintiff's suit warranting a grant of summary judgment in favor of the defendant); *In re World Trade Ctr. Disaster Litig.*, No. 06-CV-2086, 2013 WL 12084499, at *2–3 (S.D.N.Y. Apr. 11, 2013) (granting the defendants' motion for summary judgment because the plaintiffs' claims were untimely under the statute of limitations).

### 2.  Equitable Estoppel

Despite the fact that Defendant repeatedly notified Plaintiffs of the ongoing investigation of their claims, doubts about coverage, and Defendant's reservation of rights to deny coverage under the Policy, (*see* Def.'s 56.1 ¶¶ 10, 12, 14, 16–17, 19), Plaintiffs argue that Defendant is equitably estopped from raising the Policy's 12-month statute of limitations as an affirmative defense.

Limitations periods are generally subject to the defense of equitable estoppel.  *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Equitable estoppel "may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action."  *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (internal quotation marks omitted).  The doctrine is properly raised where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.  *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (finding equitable estoppel "cover[s] . . . circumstances where the defendant conceals from the plaintiff the fact that he has a cause of action and where the plaintiff is aware of his cause of action, but the defendant induces him to

forego suit until after the period of limitations has expired." (internal quotation marks and alternation omitted)).  "It is . . . fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit."  *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006).

However, "equitable estoppel cannot indefinitely extend the limitations period."  *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1494 (2d Cir. 1995).  "To invoke an estoppel as a shield against a statute of limitations defense, a plaintiff must show that he brought his action *within a reasonable time* after the facts giving rise to the estoppel have ceased to be operational."  *Id.* (emphasis added); *see also Forbes v. City of New York*, No. 15-CV-3458, 2016 WL 6269602, at *6 (S.D.N.Y. Oct. 26, 2016) (same).  "Once the circumstances inducing reliance are exposed, the plaintiff's obligation to timely file is reimposed."  *Buttry*, 68 F.3d at 1494 (internal quotation marks and alteration omitted).  "[W]here a plaintiff's cause of action has accrued, but a later misrepresentation by the defendant equitably estops that defendant from asserting the limitations period as a defense, the plaintiff must still bring his action within a reasonable time after actual or constructive knowledge of the misrepresentation."  *Id.*

Plaintiffs assert that Granite State, an alleged agent of Defendant, made partial payments for the properties to Plaintiffs and that such payments serve as "a further admission from Defendant that it was obligated to honor the claims under the Insurance Policy."  (Def.'s 56.1 ¶ 28; *see also* Pls.' Opp'n 7 n.1.)  Plaintiffs have submitted no evidence to support this claim.  On the other hand, evidence of the fact that Defendant is not associated with Granite State and that any payments by the entity did not negate the 2009 disclaimer of coverage, Defendant submitted a Form 10-K filed with the Securities and Exchange Commission ("SEC") by American Insurance Group, Inc. ("AIG").  (*See* Brehony Decl. Ex. D (Dkt. No. 81-4).)  Exhibit

21 of the Form, titled "Subsidiaries of Registrant," (*id.* at 401), lists "Granite State Insurance

Company" as a wholly owned subsidiary of AIG as of December 31, 2010, (*id.* at 404).

Therefore, at the time Plaintiffs purport to have received the final check from Granite State in

2010, Granite State was wholly of AIG and not Defendant Commonwealth.  Additionally,

Defendant submitted an affidavit from Commonwealth Claims Examiner, Katherine Lee,

declaring that Granite State "is a completely separate entity from Commonwealth Insurance

Company, nor [sic] an agent of Commonwealth Insurance Company."  (*See* Def.'s 56.1 ¶¶ 29,

30; Brehony Decl. Ex. O, ¶ 5 (Dkt. No. 81-15).)  Plaintiffs do not dispute this fact.  The Court

therefore concludes that Granite State was not an agent of Defendant when Granite State sent

payments to Plaintiffs.  Considering this evidence, at the time Plaintiffs filed this lawsuit on

August 30, 2011, it had been more than three years since Plaintiffs had any alleged

communication with Defendant.  (*See* Compl. ¶ 31 (alleging that on July 26, 2008, Plaintiffs'

agent was advised by Defendant that settlement checks on two of the properties were

forthcoming).)

  However, even assuming that Granite State *was* an agent of Defendant, Plaintiffs waited

18 months from the last alleged communication with Granite State in February 2010, (*see* Pls.'

Opp'n 7 n.1), to file this Action against Defendant.  Such a delay in filing suit is unreasonable,

even if Plaintiffs could benefit from a theory of estoppel for some period of time.  *See City of*

*Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 295 (N.D.N.Y. 2012) (finding 16

months from time when conduct potentially giving rise to estoppel ceased to be operational is not

a reasonable time to bring suit); *Tanz v. Kasakove*, No. 08-CV-1462, 2008 WL 2735973, at *1

(S.D.N.Y. July 7, 2008) (finding equitable estoppel unavailable in a case where "[t]he complaint

offers no explanation for plaintiff's failure to commence suit between December 2006 and the

17

institution of this action in February 2008," a 14-month period). Accordingly, Plaintiffs' Action

is time-barred under the Policy's suit limitation provision.

### III. Conclusion

For the reasons set forth above, Defendant's Motion For Summary Judgment is granted.

The Clerk of Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 80,

104), and close the case.

SO ORDERED.

DATED:     December 14, 2016
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

18